# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GREG GILSINGER,<br><br>       Plaintiff,<br><br>v.<br><br>CITIES AND VILLAGES MUTUAL INSURANCE COMPANY and ANDREW J. SERIO,<br><br>       Defendants,<br><br>v.<br><br>AMERICAN FAMILY MUTUAL INSURANCE COMPANY,<br><br>       Intervenor Defendant. | Case No. 21-CV-831-JPS<br><br>**ORDER** |

   On July 8, 2021, Plaintiff Greg Gilsinger ("Gilsinger") filed a complaint against Cities and Villages Mutual Insurance Company ("CVMIC"), his former employer, and Andrew J. Serio ("Serio"), an independent consultant to CVMIC. (Docket #1). On August 3, 2021, Serio filed a partial motion to dismiss. (Docket #5). On October 6, 2021, American Family Mutual Insurance Company ("American Family") filed a motion to intervene. (Docket #17). The Court will address each motion herein.

1.   **LEGAL STANDARD**

   Federal Rule of Civil Procedure 12(b) provides for the dismissal of complaints which, among other things, "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Twombly*, 550 U.S. at 555–56).

## 2. RELEVANT ALLEGATIONS

CVMIC is a local governmental entity that provides liability insurance to Wisconsin cities and villages. (Docket #1 at 3). For twenty-two years, CVMIC used a progressive discipline policy and procedure for all employees and board members, which afforded specific notice of perceived deficiencies, defined corrective action, assistance in curing the perceived deficiencies, an explanation of the consequences if corrective action is not accomplished, and a timeline for completion, with follow-up and closure. (*Id.*) In February 2019, CVMIC reevaluated and affirmed its written Employee Policies & Procedures Manual, which affords certain employees the contractual right to appeal an employment decision to CVMIC's board of directors. (*Id.* at 3).

Gilsinger began his employment with CVMIC on December 8, 1997 as the Worker's Compensation Claims Manager. (*Id.* at 3). On or about December 20, 2018, Gilsinger received a favorable performance evaluation from CVMIC. (*Id.*) At some point, Gilsinger's title changed to the Director of the Worker's Compensation Division, which he led to great success as CVMIC's top revenue producer. (*Id.* at 4).

In July 2019, the Chief Executive Officer, to whom the directors of CVMIC reported (including Gilsinger), announced his prospective retirement by early 2021. (*Id.*) That same month, another director (one for the Liability Division) announced his intention to retire on or before July 2020. (*Id.*) On October 31, 2019, CVMIC terminated Gilsinger's employment. (*Id.*) He was 58 years old at the time of termination, and he had been employed at CVMIC for nearly 22 years. (*Id.*)

Following Gilsinger's notice of termination, CVMIC's CEO, Ken Horner, offered Gilsinger a severance and release agreement and represented that Gilsinger's termination was the result of an "organizational reorganization." (*Id.*) Gilsinger opposed the termination and gave notice that he was appealing the decision to the CVMIC Board. (*Id.*) According to Gilsinger, the purpose of his appeal

> was to exercise his rights under the First and Fourteenth Amendments of the U.S. Constitution outside the scope of his ordinary duties regarding important matters of public concern, the inefficient and ineffective manner of CVMIC's operations, the misuse of public funds, breaches of public trust, and the lack of integrity and incompetence of CVMIC's officials. Such matters of public concern included misappropriation of funds, poor management culture, no independent HR department, employees lacking insurance experience, lack of specific financial goals, conflicts with the members, mistrust of administrators, retaliatory restrictions

> on post-employment competition, dishonesty of administrators, and suppression of First Amendment rights through phony and retaliatory discipline.

(*Id.* at 4–5).

On November 22, 2019, CVMIC withdrew the severance and release agreement, claiming that the company uncovered information that Gilsinger had been working on his personal business entity on CVMIC time, that he misappropriated CVMIC property in connection with such efforts, and that such actions were competitive and/or in conflict with CVMIC's interests. (*Id.* at 5). CVMIC denied Gilsinger's appeal without notice and an opportunity for Gilsinger to be heard. (*Id.*) Gilsinger maintains that none of CVMIC's allegations are factual. (*Id.*)

According to Gilsinger, Serio falsely told CVMIC that Gilsinger was operating a business (called "QMCS") in conflict with Gilsinger's employment with CVMIC. (*Id.*) Gilsinger alleges that Serio and CVMIC knew that QMCS was not in competition with CVMIC, that Serio knew that CVMIC made its revenue from issuing policies of insurance, and that Serio knew that CVMIC would lose no insurance business, clients, or revenue as a result of QMCS. (*Id.*) He also alleges that Serio and CVMIC were aware of Gilsinger's desire to avoid even the appearance of a conflict of interest and that CVMIC made no effort to confirm the veracity of Serio's false statements. (*Id.*)

In December 2019, according to Gilsinger, CVMIC falsely told Glen Boyle ("Boyle"), the manager the Milwaukee office of a company called Equian (with which QMCS seems to have had a business relationship by December 2019), that Gilsinger was misappropriating CVMIC contracts. (*Id.*) Similarly, CVMIC falsely accused Attorney Rick Ceman ("Attorney

Ceman") of the law firm of Bascom, Budish & Ceman of double billing CVMIC for work he had done for QMCS. (*Id.* at 6).

Gilsinger maintains that Serio's statements to CVMIC about Gilsinger having a competing business or a conflict of interest were false, defamatory, and were used by CVMIC to terminate Gilsinger's employment and quash his Constitutional freedoms. (*Id.*) He states that,

> CVMIC and Serio combined, associated, agreed, mutually undertook and/or concerted together for the purpose of willfully or maliciously injuring Gilsinger in his reputation, trade, business and/or profession; intentionally interfered with Gilsinger's actual and prospective contract relationships with Boyle, Equian, Attorney Ceman and the law firm of Bascom, Budish & Ceman; and, made false statements of fact to third persons, while Serio acted individually and as agent for the CVMIC, regarding Gilsinger, by making false statements that Gilsinger was engaged in dishonest, disloyal and unlawful conduct in competition with CVMIC.

(*Id.*)

As a result of Defendants' actions, Gilsinger alleges that, among other things, he lost actual and prospective contractual relationships with Boyle, Equian, Attorney Ceman, and the law firm of Bascom, Budish & Ceman. (*Id.*)

3.  **ANALYSIS**

Serio moves to dismiss two of Gilsinger's claims against him: Count Four: "intentional interference with professional relationships;" and Count Five: "injury to business—*Wis. Stat.* § 134.01."[1] (Docket #5; #1 at 9–10). The Court will address each in turn.

---

[1] While both of these claims arise under state law, the Court maintains subject-matter jurisdiction over this case by exercising

### 3.1 Intentional Interference with Professional Relationships

Under Wisconsin law, there are five elements that a plaintiff must plead for a claim of intentional interference with professional relationships:

> (1) the plaintiff had a contract or a prospective contractual relationship with a third party, (2) the defendant interfered with that relationship, (3) the interference by the defendant was intentional, (4) there was a causal connection between the interference and damages, and (5) the defendant was not justified or privileged to interfere.

*Wesbrook v. Ulrich*, 840 F.3d 388, 395 (7th Cir. 2016) (quoting *Briesemeister v. Lehner*, 720 N.W.2d 531, 542 (Wis. Ct. App. 2006)). Serio argues that Gilsinger failed to plead elements two and three. (Docket #6 at 5).

The relevant *factual* allegations of the complaint read as follows:

> 27. Defendant, Serio, falsely told CVMIC that Gilsinger was operating a business, QMCS, in conflict with Gilsinger's employment with CVMIC.
> 28. Serio and CVMIC knew that QMCS was not in competition with CVMIC.
> 29. Serio knew that CVMIC made its revenue from issuing policies of insurance.
> 30. Serio knew that CVMIC would lose no insurance business, clients or revenue as a result of QMCS.
> 31. Serio and CVMIC were aware of Gilsinger's desire to avoid even the appearance of a conflict of interest.
> 32. CVMIC made no effort to confirm the veracity of Serio's false statements.
> 33. During December 2019, CVMIC falsely told Glen Boyle, manager of Equian's Milwaukee office, that Gilsinger was misappropriating CVMIC contracts.
>
> . . . .

---

supplemental jurisdiction by way of Gilsinger's other claims, which he brings under federal law. *See* 28 U.S.C. § 1367.

> 35. During December 2019, CVMIC falsely accused Attorney Rick Ceman with the law firm of Bascom, Budish & Ceman of double billing CVMIC for work he had done for QMCS.

(Docket #1 at 5–6). These paragraphs allege *facts* that tend to show that Serio told CVMIC about Gilsinger's allegedly illegal behavior and that CVMIC relayed the information to third parties.

The *conclusory legal assertions* of the complaint read as follows:

> 38. CVMIC and Serio combined, associated, agreed, mutually undertook and/or concerted together for the purpose of willfully or maliciously injuring Gilsinger in his reputation, trade, business and/or profession; intentionally interfered with Gilsinger's actual and prospective contract relationships with Boyle, Equian, Attorney Ceman and the law firm of Bascom, Budish & Ceman; and, made false statements of fact to third persons, while Serio acted individually and as agent for the CVMIC, regarding Gilsinger, by making false statements that Gilsinger was engaged in dishonest, disloyal and unlawful conduct in competition with CVMIC.

(*Id.* at 6). The Court has no facts on which to arrive at or to color in the underpinnings of these legal assertions.

In his response, Gilsinger oddly focuses on element one (i.e., whether Gilsinger had any contracts or a prospective contractual relationship with a third party). (Docket #12 at 3). This element is not in question at this juncture. And, where Gilsinger discusses elements two and three, his arguments are just as conclusory as his complaint:

> Serio, an independent consultant to CVMIC, is the direct cause of the interference in that relationship. Serio interfered with the actual and prospective contractual relationship by stating the false narrative that Gilsinger was engaged in

> dishonest, disloyal, and unlawful conduct in competition with CVMIC. The pleadings are clear that Serio's interference by his false communications was intentional.

(*Id.*) (internal citations omitted). Again, the Court has no facts on which to base Serio's alleged interference and intent. Gilsinger has alleged that Serio shared false information with CVMIC and that CVMIC shared that information with third parties. But the complaint does not thread the needle to allege that Serio shared the false information with third parties or that, by sharing the information with CVMIC, Serio intended for the information to be shared with third parties.[2] The Court will grant Serio's motion to dismiss as to Claim Four.

### 3.2 Injury to Business—Wis. Stat. § 134.01

An injury to business claim under Wisconsin Statute § 134.01 requires four elements: "(1) the defendants acted together, (2) with a common purpose to injure the plaintiff's reputation and business, (3) with malice, and (4) the acts financially injured the plaintiff." *Carlson v. City of Delafield*, 779 F. Supp. 2d 928, 946 (E.D. Wis. 2011) (citation omitted). While § 134.01 is a criminal statute, it provides the basis for civil tort liability. *Radue v. Dill*, 246 N.W.2d 507, 511 ( Wis. 1976). The Court will address only Serio's challenge to element one, as it is dispositive.

---

[2]The last phrase of Paragraph 38 of the complaint comes close to alleging that perhaps Serio acted as CVMIC's spokesman, but its meandering grammatical structure leaves a reader to wonder exactly who told what to whom. (Docket #1 at 6) ("CVMIC and Serio . . . made false statements of fact to third persons, while Serio acted individually and as agent for the CVMIC, regarding Gilsinger, by making false statements that Gilsinger was engaged in dishonest, disloyal and unlawful conduct in competition with CVMIC.").

As to element one, the parties engage in much discussion of the intra-corporate conspiracy doctrine. Under this doctrine, "allegations of conspiracy between an employer and its employees are not sufficient under Wisconsin law" to allege a claim for conspiracy. *Milsap v. J./Sentinel, Inc.*, 897 F. Supp. 406, 409 (E.D. Wis. 1995), *aff'd in part, rev'd in part on other grounds*, 100 F.3d 1265 (7th Cir. 1996). However, the problem in the complaint is more elemental. For nearly the same reasoning as above, *see supra* Section 3.1, Gilsinger's allegations as to this claim are conclusory: there are no factual allegations that Serio and CVMIC acted in concert in order to interfere with Gilsinger's business. Factually, Gilsinger alleges that Serio knowingly shared false information with CVMIC and that CVMIC spread this information to third parties. As to whether there was a conspiracy between Serio and CVMIC to interfere with Gilsinger's business, the complaint states only that "CVMIC and Serio combined, associated, agreed, mutually undertook and/or concerted together for the purpose of willfully or maliciously injuring Gilsinger in his reputation, trade, business and/or profession." (Docket #1 at 6). This is a conclusory, legal assertion. The Court will grant Serio's motion as to Claim Four.

4.   **LEAVE TO AMEND**

The Court is granting Serio's motion to dismiss as to Claims Three and Four. However, the Court will give Gilsinger leave to amend his complaint. With more factually specific allegations, Gilsinger's complaint as to Claims Three and Four might pass the pleading stage.

Still though, for the sake of brevity and the desire to address only the readily dispositive arguments of the parties, the Court has not addressed some of the parties' arguments in the alterative (e.g., the intra-corporate conspiracy doctrine and Gilsinger's possible failure to allege malice). Such

unaddressed arguments may become the subject of future motions to dismiss on Plaintiff's (possible) amended complaint.

Recently, this branch of the Court began imposing a meet-and-confer requirement before any contemplated dispositive motion is submitted:

> If dispositive motions are contemplated, the parties are directed to meet and confer prior to filing such a motion with the goal of preparing but a single, agreed-upon narrative of material facts for submission to the Court. For summary judgment motions, the parties must meet and confer at least 30 days prior to filing the motion. The agreed-upon statement of material facts must contain pinpoint citations to the record. Any disputed facts must be itemized and supported by each party's separate pinpoint citation to the record. Itemized disputed facts may not exceed one (1) page. In order to determine which facts are material for a given case, counsel must draw upon both relevant case authority and relevant jury instructions. If the parties cannot agree upon a set of facts, or if any of the disputed facts are material, then summary judgment is not appropriate. Fed. R. Civ. P. 56(a). In short, simply because an attorney can submit a motion for summary judgment does not mean that they are obliged to do so.

This requirement is meant to ensure that all parties fully understand the elements of their claims and discuss their respective abilities to prove their claims and defenses. In this way, the issues can be narrowed early in a suit's life, reducing the time and cost of litigation.

Because any amended complaint may later invite dispositive motions, the Court will preemptively impose a meet-and-confer requirement on this case between all parties before Plaintiff files an amended complaint (if he so choses to do so). The amended complaint will

be due within **thirty (30) days** of this Order.³ Certainly, the parties may find that they need the Court's intervention on close calls a law and fact, but many issues in a case can be resolved by competent attorneys working reasonably with each other.

5.     **AMERICAN FAMILY'S MOTION TO INTERVENE**

Serio has a homeowners insurance policy issued to him by American Family (the "Policy"). (Docket #18 at 3). Following the filing of the present suit, Serio tendered the defense of the case to American Family. (*Id.*) American Family retained merits counsel to defend Serio pursuant to a reservation of rights within the policy. (*Id.*) Based on the nature of the allegations in the Complaint and the types of damages that are being sought (including both compensatory and punitive damages), American Family now contends that there is no coverage under the Policy. Accordingly, American Family seeks an order permitting it to intervene in this matter so that it may obtain a declaration that it has no duty to indemnify or defend Serio in the suit.

Pursuant to Federal Rule of Civil Procedure 24(a)(2) ("Rule 24"), a movant must be permitted to intervene in an action if: (1) the application is timely; (2) the applicant "claims an interest relating to the property or transaction that is the subject of the action;" (3) the disposition of the action "may as a practical matter impair or impede the movant's ability to protect its interest;" and (4) existing parties are not adequate representatives of the applicant's interest. Fed. R. Civ. P. 24(a).

---

³A narrative statement of material facts, as discussed above, will become necessary only if dispositive motions are filed.

### 5.1 Timeliness

While Rule 24 does not set a specific time limitation for intervention, the Seventh Circuit has described the timeliness requirement as preventing a tardy intervenor from derailing a lawsuit "within sight of the terminal." *United States v. S. Bend Cmty. Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983).

Gilsinger filed his complaint on July 8, 2021. (Docket #1). Serio filed a motion to dismiss on August 3, 2021, (Docket #5), which the Court had not yet addressed when American Family filed its motion to intervene. Gilsinger's suit had been pending for only three months when American Family filed its motion to intervene. American Family acted promptly once it was put on notice of the litigation when its insured tendered the defense to it. Its motion is timely.

### 5.2 American Family's Protectable Interest

The "interest" of a would-be intervenor, as required by Rule 24, must be a "direct, significant, legally protectable" one. *Security Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995). In this case, American Family issued the Policy in Wisconsin. Therefore, Wisconsin law applies to determine the nature of the insurer's interests in the litigation. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1091 (7th Cir. 1999). The Wisconsin Supreme Court has held that, where an insurer is not named in the underlying lawsuit, insurance coverage may be determined by the insurer's intervention in the underlying action. *See Fire Ins. Exch. v. Basten*, 549 N.W.2d 690 (Wis. 1996).

American Family has a significant interest in the present action because it believes that there is no coverage for the claims asserted against its insured. American Family wishes to follow the proper procedure under Wisconsin law to obtain a declaration that it has no duty to indemnify or

defend Serio in relation to the Gilsinger's claims. Thus, American Family has a "direct, significant, and legally protectable" in the lawsuit. *United States v. Thorson*, 219 F.R.D. 623, 627 (W.D. Wis. 2003).

### 5.3 Impairment of American Family's Ability to Protect Its Interest

Wisconsin courts have sanctioned intervention as a proper procedure for an insurer to follow to avoid the risk of breaching its duty to defend its insured. *Thorson*, 219 F.R.D. at 627. One of the most efficient and fair ways to protect American Family's interest in not having to incur the cost of defending the underlying action is to permit American Family to intervene for the purpose of litigating the coverage issues. Because American Family maintains that the Policy does not afford coverage, it seeks to ensure that this occurs by intervening in the action so that the coverage issues may be determined.

### 5.4 Adequate Representation by Existing Parties

No other parties to this case adequately represent American Family's interests. A party seeking intervention as of right must only make a showing that the representation "may be" inadequate, and "the burden of making that showing should be treated as minimal." *Lake Investors Dev. Grp., Inc. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1261 (7th Cir. 1983). In this case, no party, other than American Family, is interested in establishing the lack of coverage for the claims asserted against Defendants. Because no party is interested in establishing a lack of coverage for the claims asserted, American Family's interests are not protected.

For the foregoing reasons, American Family satisfies the requirements of Rule 24, and the Court will grant its motion to intervene.

**6. CONCLUSION**

The Court is granting Serio's motion to dismiss Claims Three and Four. (Docket #5). If Gilsinger elects to submit an amended complaint, the parties are ordered to meet and confer. The Court will also grant American Family's motion to intervene. (Docket #17). Its proposed intervenor complaint, (Docket #19), shall be the operative intervenor complaint.

Accordingly,

**IT IS ORDERED** that Defendant Andrew J. Serio's motion to dismiss Claims Three and Four of the complaint (Docket #5) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that if Plaintiff Greg Gilsinger elects to submit an amended complaint, he must do so within **thirty (30) days** of this Order and the parties are required to meet and confer; and

**IT IS FURTHER ORDERED** that American Family Mutual Insurance Company's motion to intervene (Docket #17) be and the same is hereby **GRANTED**. Its proposed intervenor complaint (Docket #19) shall be the operative intervenor complaint.

Dated at Milwaukee, Wisconsin, this 31st day of January, 2022.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Page 14 of 14
Case 2:21-cv-00831-JPS    Filed 01/31/22    Page 14 of 14    Document 21