# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

GREG GILSINGER,

           Plaintiff,

v.

CITIES AND VILLAGES MUTUAL
INSURANCE COMPANY and
ANDREW J. SERIO,

           Defendants,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

           Intervenor Defendant.

Case No. 21-CV-831-JPS

**ORDER**

On July 8, 2021, Plaintiff Greg Gilsinger ("Gilsinger") filed a complaint against Cities and Villages Mutual Insurance Company ("CVMIC"), his former employer, and Andrew J. Serio ("Serio"), an independent consultant to CVMIC. ECF No. 1. On August 3, 2021, Serio filed a partial motion to dismiss Claims Four and Five of Gilsinger's complaint. ECF No. 5. On January 31, 2022, the Court granted Serio's partial motion to dismiss and ordered Gilsinger to file an amended complaint within thirty days of the order, after a meet-and-confer between the parties. ECF No. 21 at 9–11.

Following entry of the Court's order, Gilsinger filed a Rule 60(a) motion to correct clerical mistakes in the order. ECF No. 23. On February 25, 2022, March 2, 2022, and March 4, 2022, respectively, Serio, Gilsinger,

and CVMIC each filed a report on the parties' meet-and-confer process. ECF Nos. 24, 26, 27. On March 2, 2022, Gilsinger timely filed an amended complaint. ECF No. 25. On March 14, 2022, Serio filed a Rule 12(b)(6) partial motion to dismiss Claims Four and Five of Gilsinger's amended complaint, which is now fully briefed. ECF Nos. 29, 30, 32, 33. The Court will address each submission and motion herein.

## 1. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) provides for the dismissal of complaints which, among other things, "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Twombly*, 550 U.S. at 555–56).

## 2.    RELEVANT ALLEGATIONS

CVMIC is a local governmental entity that provides liability insurance to Wisconsin cities and villages. ECF No. 25 at 3. For twenty-two years, CVMIC used a progressive discipline policy and procedure for all employees and board members, which afforded specific notice of perceived deficiencies, defined corrective action, assistance in curing the perceived deficiencies, an explanation of the consequences if corrective action is not accomplished, and a timeline for completion, with follow-up and closure. *Id.* at 4. In February 2019, CVMIC reevaluated and affirmed its written Employee Policies & Procedures Manual, which affords certain employees the contractual right to appeal an employment decision to CVMIC's board of directors. *Id.*

Gilsinger began his employment with CVMIC on December 8, 1997 as the Worker's Compensation Claims Manager. *Id.* at 3. On or about December 20, 2018, Gilsinger received a favorable performance evaluation from CVMIC. *Id.* At some point, Gilsinger's title changed to the Director of the Worker's Compensation Division, which he led with great success as CVMIC's top revenue producer. *Id.* at 4.

In July 2018, the Chief Executive Officer, to whom the directors of CVMIC reported (including Gilsinger), announced his prospective retirement by early 2021. *Id.* In July 2019, another director (one for the Liability Division) announced his intention to retire in or before July 2020. *Id.* On October 31, 2019, CVMIC terminated Gilsinger's employment. *Id.* Gilsinger was 58 years old at the time of his termination, and he had been employed at CVMIC for nearly 22 years. *Id.*

Following Gilsinger's notice of termination, CVMIC's CEO, Ken Horner ("Horner"), offered Gilsinger a severance and release agreement

and represented that Gilsinger's termination was the result of an "organizational reorganization." *Id.* Gilsinger opposed the termination and gave notice that he was appealing the decision to the CVMIC Board. *Id.* According to Gilsinger, the purpose of his appeal was to "exercise his rights under the First and Fourteenth Amendments of the U.S. Constitution outside the scope of his ordinary duties regarding important matters of public concern." *Id.* at 4–5.

On November 22, 2019, CVMIC withdrew the severance and release agreement, claiming that the company uncovered information that Gilsinger had been working on his personal business entity on CVMIC time, that he misappropriated CVMIC property in connection with such efforts, and that such actions were competitive and/or in conflict with CVMIC's interests. *Id.* at 5. CVMIC denied Gilsinger's appeal without notice and an opportunity for Gilsinger to be heard. *Id.* at 6. Gilsinger maintains that none of CVMIC's allegations are factual. *Id.*

According to Gilsinger, in 2017, Serio, an independent consultant to CVMIC, and Gilsinger began discussing Gilsinger's plan to start a new business, Quality Medical Care Solutions ("QMCS"). *Id.* at 6. Gilsinger alleges that Serio encouraged him to work on QMCS. *Id.* Serio set up meetings between Gilsinger and third parties, including Equian, related to QMCS. *Id.* Serio, thereafter, regularly asked Gilsinger for updates on QMCS. *Id.* Gilsinger alleges that Serio never expressed any concerns about QMCS competing with CVMIC and that Serio knew that QMCS was not in competition with CVMIC. *Id.* Specifically, Gilsinger contends that Serio knew that CVMIC makes its revenue from issuing policies of insurance and that it would lose no insurance business, clients, or revenue as a result of QMCS. *Id.*

Case 2:21-cv-00831-JPS   Filed 04/29/22   Page 4 of 23   Document 35

Nonetheless, according to Gilsinger, Serio pushed CVMIC to enter into agreements with third parties, which could have created a conflict with QMCS. *Id.* These agreements were not favorable to CVMIC and were opposed by Gilsinger. *Id.* In turn, Serio pushed Gilsinger to promote QMCS to CVMIC's agents, which also would have created a conflict between QMCS and CVMIC. *Id.* Gilsinger refused to create any conflict or the appearance of a conflict between QMCS and CVMIC. *Id.* Gilsinger alleges that Serio knew that Gilsinger sought to avoid even the appearance of a conflict but that Serio intended to create one anyway. *Id.* at 6–7.

Gilsinger further alleges that when Serio failed to create an actual conflict between CVMIC and QMCS, Serio intentionally made false statements to CVMIC about the existence of a conflict. *Id.* at 7. Specifically, Gilsinger represents that, in April of 2019, Serio told Horner that Gilsinger had set up a personal business in conflict with Gilsinger's employment with CVMIC. *Id.* According to Gilsinger, Serio intentionally made these false statements to hinder QMCS and to directly interfere with the contractual employment relationship between CVMIC and Gilsinger. *Id.* Gilsinger alleges that CVMIC made no effort to confirm the veracity of Serio's false statements. *Id.* Gilsinger maintains that, as a result of Serio's false statements to CVMIC about Gilsinger having a competing business and/or a conflict of interest, CVMIC terminated Gilsinger's employment, withdrew his severance contract, and quashed his Constitutional freedoms. *Id.* at 8.

Gilsinger alleges that Serio made these false statements to CVMIC with the intent that the information be shared with third parties. *Id.* at 7. Moreover, according to Gilsinger, Serio had actual knowledge that the false statements were being shared with third parties. *Id.* Gilsinger additionally alleges that Serio personally made false statements to third parties about

Gilsinger. *Id.* For example, in December 2019, Gilsinger alleges that CVMIC and Serio made intentional false statements to Glen Boyle ("Boyle"), manager of Equian's Milwaukee office, that Gilsinger was misappropriating CVMIC contracts. *Id.* at 8. According to Gilsinger, CVMIC and Serio knew that their false statements would interfere with Gilsinger's prospective contractual relationships with Boyle and Equian and intended for that result. *Id.*

Next, in November and December 2019, Gilsinger alleges that CVMIC and Serio acted in concert when they accused Attorney Rick Ceman ("Attorney Ceman") and the law firm of Bascom, Budish & Ceman of conspiring with Gilsinger to double bill CVMIC for work Attorney Ceman had done for QMCS. *Id.* at 8–9. Gilsinger maintains that the alleged interference in his professional relationships with Attorney Ceman and the law firm of Bascom, Budish & Ceman was due to (1) Serio making false statements to CVMIC and directly to third parties that Gilsinger created a conflict of interest, misappropriated CVMIC contracts, and conspired with Attorney Ceman to double bill CVMIC; and (2) Serio acting in concert with CVMIC to inflict harm for harm's sake by intentionally providing false information to third parties that Gilsinger created a conflict of interest, misappropriated CVMIC contracts, and conspired with Attorney Ceman to double bill CVMIC. *Id.* at 9–10.

Thus, as a result of Serio and CVMIC's actions, Gilsinger alleges that he lost actual and prospective contractual relationships with CVMIC, Boyle, Equian, Attorney Ceman, and the law firm of Bascom, Budish & Ceman. *Id.*

Case 2:21-cv-00831-JPS   Filed 04/29/22   Page 6 of 23   Document 35

## 3. ANALYSIS

### 3.1 Motion to Correct Clerical Mistakes

The Court will grant Gilsinger's Rule 60(a) motion, ECF No. 23, to correct clerical mistakes in its order dated January 31, 2022, ECF No. 21. Fed. R. Civ. P. 60(a). The order will be corrected to reflect that: (1) on line 18 of page 9, the Court will grant Serio's motion as to "Claim Five" instead of "Claim Four"; (2) on lines 20–21 and line 24 of page 9, the references to "Claims Three and Four" should instead state "Claims Four and Five"; and (3) on lines 2–3 and line 9 of page 14, the references to "Claims Three and Four" should instead state "Claims Four and Five."

### 3.2 The Parties' Meet-and-Confer Process

In its order dated January 31, 2022, the Court ordered the parties to meet and confer prior to the filing of any amended complaint. ECF No. 21 at 9–11. The requirement was "meant to ensure that all parties fully understand the elements of their claims and discuss their respective abilities to prove their claims and defenses." *Id.* at 10. An additional purpose of the requirement was for "competent attorneys working reasonably with each other" to attempt to resolve issues in the case prior to the Court's intervention on close calls of law and fact. *Id.* at 11.

The Court notes at the outset that, based upon the submissions received from Serio, Gilsinger, and CVMIC, the parties did not adequately complete the meet-and-confer requirement. While the Court does not have the time, the interest, or the resources to sift through the parties' various reports on their meet-and-confer process, the Court alerts the parties to certain issues of which they should take heed. First, Serio's counsel summarily advised the Court that, after meeting and conferring with Gilsinger's counsel regarding "several paragraphs containing allegations

against Andrew Serio[,] . . . *nothing* in the proposed amended complaint met the pleading standards to sustain these two previously dismissed causes of action." ECF No. 24 at 1 (emphasis added).

At the pleadings stage, where the Court must "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff," an attorney acting reasonably should recognize that many of the allegations in Gilsinger's amended complaint are sufficient to correct the deficiencies the Court observed in its order. *Kubiak*, 810 F.3d at 480–81. While Gilsinger's amended complaint alleges legal conclusions, those legal conclusions are supported by factual allegations sufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 679–80. The Court finds that the statement that "nothing" in the amended complaint meets the pleading standard reflects an unwillingness to fulfill the Court's meet-and-confer requirement. This shortcoming is exacerbated by Serio's citations throughout his submissions to cases decided at much later procedural stages, such as summary judgment or post-verdict, the latter of which requires an examination of the sufficiency of the evidence. These cases do not address "pleading standards" and therefore are inappropriate at the pleadings stage.

Second, the Court cautions Gilsinger's counsel that his report of asking defense counsel to discuss every paragraph in the amended complaint, including the allegation that lists CVMIC's mailing address, also runs afoul of the Court's order. ECF No. 26 at 2. The Court's order was clear that the parties were to meet and confer on the *disputed* issues so as to leave only close calls of fact and law for the Court. ECF No. 21 at 9–11. CVMIC's address is not a disputed issue and raising it as part of the meet-and-confer

process was a complete waste of time and resources. ECF No. 27 at 1, ECF No. 26 at 2.

The Court finally cautions CVMIC's counsel that once Gilsinger's counsel moved past the non-substantive allegations, CVMIC's counsel had an obligation to meet and confer on each of the new allegations with Gilsinger's counsel. From CVMIC's counsel's meet-and-confer report, it does not appear that CVMIC's counsel did so. ECF No. 27.

Notwithstanding the parties' respective inabilities to conform with the Court's directives, in the interest of judicial efficiency, the Court next addresses the motion for partial dismissal.

### 3.3 Motion for Partial Dismissal

Serio moves to dismiss two of Gilsinger's claims against him: Count Four: "intentional interference with professional relationships;" and Count Five: "injury to business—*Wis. Stat.* § 134.01."[1] ECF No. 29; ECF No. 30 at 1. The Court will address each in turn.

#### 3.3.1 Claim Four – Intentional Interference with Professional Relationships

Under Wisconsin law, there are five elements that a plaintiff must plead to establish a claim of intentional interference with professional relationships:

> (1) the plaintiff had a contract or a prospective contractual relationship with a third party, (2) the defendant interfered with that relationship, (3) the interference by the defendant was intentional, (4) there was a causal connection between the

_____

[1]While both of these claims arise under state law, the Court maintains subject-matter jurisdiction over these claims by exercising supplemental jurisdiction by way of Gilsinger's other claims, which he brings under federal law. *See* 28 U.S.C. § 1367.

interference and damages, and (5) the defendant was not justified or privileged to interfere.

*Wesbrook v. Ulrich*, 840 F.3d 388, 395 (7th Cir. 2016) (quoting *Briesemeister v. Lehner*, 720 N.W.2d 531, 542 (Wis. Ct. App. 2006)). Serio argues that Gilsinger failed to plead elements two and three. ECF No. 30 at 5.

In its order dated January 31, 2022, the Court held that Gilsinger's intentional interference with professional relationships claim was deficient on the second and third elements because the original complaint "[did] not thread the needle to allege that Serio shared the false information with third parties or that, by sharing the information with CVMIC, Serio intended for the information to be shared with third parties." ECF No. 21 at 8. In his amended complaint, Gilsinger alleges the following facts, in addition to those that had previously been before the Court as part of the original complaint:

42.  When Serio failed to create an actual conflict of interest between CVMIC and QMCS, Serio intentionally made false statements to CVMIC about the existence of a conflict.

43.  In April of 2019, Serio told Horner that Gilsinger had set up a personal business, the nature of which was a conflict with Gilsinger's employment with CVMIC.

44.  Serio intentionally made false statements to CVMIC that Gilsinger was operating QMCS in conflict with Gilsinger's employment with CVMIC.

45.  Serio's intentional false statements and actions were made to hinder Gilsinger's prospective business and to interefere [sic] directly in the contractual relationship between CVMIC and Gilsinger.[2]

_____

[2]In his motion, Serio argues that Gilsinger "identifies at most four contracts and prospective contracts with which interference allegedly occurred: (1) Glen Boyle; (2) Equian; (3) Attorney Rick Ceman; and (4) the law

. . . .

50.   Serio made the intentional false statements to CVMIC
      with the further intent that the false information be
      shared with third parties.

51.   Serio had actual knowledge that his intentional false
      statements were being spread to third parties and Serio
      personally made intentional false statements to third
      parties about Gilsinger.

52.   During December 2019, CVMIC and Serio made
      intentional false statements to Glen Boyle, manager of
      Equian's Milwaukee office, that Gilsinger was
      misappropriating CVMIC contracts.

. . . .

55.   CVMIC and Serio were aware that their intentional false
      statements would interfere with Gilsinger's prospective
      contractual relationships with Boyle and Equian.

. . . .

60.   Serio intentionally acted with CVMIC to interfere with
      Gilsinger's actual and prospective contract relationships
      with Boyle, Equian, Attorney Ceman and the law firm of
      Bascom, Budish & Ceman by making intentional false
      statements that Gilsinger was engaged in dishonest,
      disloyal and unlawful conduct, by competing with
      CVMIC; misappropriating CVMIC contracts; and, by
      Gilsinger conspiring with Attorney Ceman to double bill
      CVMIC for work Ceman had done for QMCS.

61.   Serio made intentional false statements of fact to third
      parties, including CVMIC, that Gilsinger was engaged
      in dishonest, disloyal and unlawful conduct, by
      competing with CVMIC; misappropriating CVMIC
      contracts; and, by Gilsinger conspiring with Attorney

---

firm of Bascom, Budish & Ceman." ECF No. 30 at 5. The Court notes that
Gilsinger also pleads Serio's interference with Gilsinger's employment
relationship with CVMIC.

> Ceman to double bill CVMIC for work Ceman had done
> for QMCS.

ECF No. 25 at 7–8. At the pleadings stage, where the Court must "draw all reasonable inferences in favor of the plaintiff," these allegations support the inference that Serio interfered with Gilsinger's professional relationships with CVMIC, Boyle, Equian, Attorney Ceman, and the law firm of Bascom, Budish & Ceman. *Kubiak*, 810 F.3d at 480–81. These allegations are sufficiently specific to correct the deficiencies the Court observed in its earlier order.

In the section of his motion addressing Gilsinger's interference with professional relationships claim, Serio argues that Gilsinger's allegation that "[d]uring December 2019, CVMIC and Serio made intentional false statements to Glen Boyle, manager of Equian's Milwaukee office, that Gilsinger was misappropriating CVMIC contracts," ECF No. 25 at 8, is "conclusory and does not support Gilsinger's ultimate legal conclusion that Serio and CVMIC acted in concert in an effort to intentionally interfere with Gilsinger's actual and prospective contractual relationships." ECF No. 30 at 5. But "acting in concert" is not one of the five elements required to state a claim for intentional interference with professional relationships under Wisconsin law. *See Wesbrook*, 840 F.3d at 395. It *is* an element, however, of Gilsinger's injury to business claim under Wisconsin Statute § 134.01, which the Court will take up separately.

Next, Serio argues that Gilsinger's amended complaint fails to state a claim for intentional interference with professional relationships because it does not plead facts to demonstrate intent. ECF No. 30 at 6. Serio cites *Augustine v. Anti-Defamation League*, 249 N.W.2d 547, 533 (Wis. 1977) and *Cudd v. Crownhart*, 364 N.W.2d 158, 160 (Wis. Ct. App. 1985) to support the

proposition that "[n]o allegation in the Complaint provides any factual basis on which the Court could conclude (or even draw a reasonable inference) that Serio acted with a purpose" when he allegedly interfered with Gilsinger's professional relationships. *Id.*

The Court first notes that, in his amended complaint, Gilsinger has pleaded sufficient facts at the pleadings stage to demonstrate Serio's alleged intent and purpose to interfere with Gilsinger's relationships with CVMIC, Boyle, Equian, Attorney Ceman, and the law firm of Bascom, Budish & Ceman. For example, Gilsinger pleads:

39. Serio pushed Gilsinger to promote QMCS to individuals who were acting as agents for CVMIC, which would have created a conflict of interest between QMCS and CVMIC.

40. Gilsinger refused to create conflicts of interest and avoided any appearance of a conflict between QMCS and CVMIC.

41. Serio intended to create a conflict of interest between CVMIC and QMCS.

42. When Serio failed to create an actual conflict of interest between CVMIC and QMCS, Serio intentionally made false statements to CVMIC about the existence of a conflict.

43. In April of 2019, Serio told Horner that Gilsinger had set up a personal business, the nature of which was a conflict with Gilsinger's employment with CVMIC.

44. Serio intentionally made false statements to CVMIC that Gilsinger was operating QMCS in conflict with Gilsinger's employment with CVMIC.

45. Serio's intentional false statements and actions were made to hinder Gilsinger's prospective business and to interfere directly in the contractual relationship between CVMIC and Gilsinger.

46. Serio had no lawful purpose in making his intentional false statements.

. . . .

52. During December 2019, CVMIC and Serio made intentional false statements to Glen Boyle, manager of Equian's Milwaukee office, that Gilsinger was misappropriating CVMIC contracts.

53. CVMIC and Serio had no lawful purpose in falsely accusing Gilsinger of misappropriating CVMIC contracts.

54. CVMIC and Serio were aware that Equian and QMCS had no formal relationship while Gilsinger was employed at CVMIC.

55. CVMIC and Serio were aware that their intentional false statements would interfere with Gilsinger's prospective contractual relationships with Boyle and Equian.

. . . .

60. Serio intentionally acted with CVMIC to interfere with Gilsinger's actual and prospective contract relationships with Boyle, Equian, Attorney Ceman and the law firm of Bascom, Budish & Ceman by making intentional false statements that Gilsinger was engaged in dishonest, disloyal and unlawful conduct, by competing with CVMIC; misappropriating CVMIC contracts; and, by Gilsinger conspiring with Attorney Ceman to double bill CVMIC for work Ceman had done for QMCS.

61. Serio made intentional false statements of fact to third parties, including CVMIC, that Gilsinger was engaged in dishonest, disloyal and unlawful conduct, by competing with CVMIC; misappropriating CVMIC contracts; and, by Gilsinger conspiring with Attorney

> Ceman to double bill CVMIC for work Ceman had done for QMCS.[3]

ECF No. 25 at 7–10.

Further, *Augustine* does not provide support for Serio's arguments regarding the sufficiency of Gilsinger's amended complaint because it addresses the question of purpose or intent at the summary judgment stage on a review of competing witness affidavits. *Augustine*, 249 N.W.2d at 555. *Cudd* is similarly inapposite because it analyzes the issue following a jury verdict where the court was weighing whether there was sufficient credible evidence to support the jury's verdict. *Cudd*, 364 N.W.2d at 161. The Court will deny Serio's partial motion to dismiss as to Claim Four.

### 3.3.2   Claim Five – Injury to Business (Wis. Stat. § 134.01)

An injury to business claim under Wisconsin Statute § 134.01 requires four elements: "(1) the defendants acted together, (2) with a common purpose to injure the plaintiff's reputation and business, (3) with malice, and (4) the acts financially injured the plaintiff." *Carlson v. City of Delafield*, 779 F. Supp. 2d 928, 946 (E.D. Wis. 2011) (citation omitted). While § 134.01 is a criminal statute, it provides the basis for civil tort liability. *Radue v. Dill*, 246 N.W.2d 507, 511 (Wis. 1976).

In its order dated January 31, 2022, the Court held that Gilsinger's injury to business claim was deficient because "there are no factual allegations that Serio and CVMIC acted in concert in order to interfere with

---

[3]In his motion, ECF No. 30 at 5–6, Serio argues that Gilsinger pleads facts regarding interference with his relationships with Attorney Ceman and the law firm of Bascom, Budish & Ceman only as to CVMIC. The excerpted allegations (in addition to others), however, demonstrate that Gilsinger pleads facts regarding interference with these relationships as to both Serio and CVMIC.

Case 2:21-cv-00831-JPS   Filed 04/29/22   Page 15 of 23   Document 35

Gilsinger's business" and because the only relevant allegation was a legal conclusion. ECF No. 21 at 9 ("[T]he complaint states only that 'CVMIC and Serio combined, associated, agreed, mutually undertook and/or concerted together for the purpose of willfully or maliciously injuring Gilsinger in his reputation, trade, business and/or profession.'") (quoting ECF No. 1 at 6). In his amended complaint, Gilsinger alleges the following facts, in addition to those that had previously been before the Court as part of the original complaint:

52. During December 2019, CVMIC and Serio made intentional false statements to Glen Boyle, manager of Equian's Milwaukee office, that Gilsinger was misappropriating CVMIC contracts.

53. CVMIC and Serio had no lawful purpose in falsely accusing Gilsinger of misappropriating CVMIC contracts.

54. CVMIC and Serio were aware that Equian and QMCS had no formal relationship while Gilsinger was employed at CVMIC.

55. CVMIC and Serio were aware that their intentional false statements would interfere with Gilsinger's prospective contractual relationships with Boyle and Equian.

. . . .

60. Serio intentionally acted with CVMIC to interfere with Gilsinger's actual and prospective contract relationships with Boyle, Equian, Attorney Ceman and the law firm of Bascom, Budish & Ceman by making intentional false statements that Gilsinger was engaged in dishonest, disloyal and unlawful conduct, by competing with CVMIC; misappropriating CVMIC contracts; and, by Gilsinger conspiring with Attorney Ceman to double bill CVMIC for work Ceman had done for QMCS.

61. Serio made intentional false statements of fact to third parties, including CVMIC, that Gilsinger was engaged

> in dishonest, disloyal and unlawful conduct, by
> competing with CVMIC; misappropriating CVMIC
> contracts; and, by Gilsinger conspiring with Attorney
> Ceman to double bill CVMIC for work Ceman had done
> for QMCS.

ECF No. 25 at 8–9. These allegations are again sufficiently specific at the pleadings stage to correct the deficiencies the Court observed in its prior order.

In his motion, Serio argues that Gilsinger failed to allege facts that Serio acted maliciously, which is the third element of the claim. *See Carlson*, 779 F. Supp. 2d at 946. To support his argument, Serio first cites *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 469 N.W.2d 629, 634 (Wis. 1991) and *Allen & O'Hara, Inc. v. Barrett Wrecking, Inc.*, 898 F.2d 512, 516 (7th Cir. 2016). Again, both cases are procedurally inapposite. The *Maleki* court analyzed the issue of malice post-judgment, looking to the sufficiency of the evidence to determine whether malice was proven. *Maleki*, 469 N.W.2d at 634–35. In *Allen*, the court analyzed the issue on review of a directed verdict, where it again reviewed the sufficiency of the evidence before it. 898 F.2d at 516. These cases are a far cry from the pleadings stage, and Serio's citations to these cases are ill-suited. ECF No. 30 at 7 (citing *Allen* for the proposition that "[i]n Wisconsin, if circumstantial evidence supports equal inferences of lawful action and unlawful action, then the claim of conspiracy [under § 134.01] is not proven."). Contrary to Serio's argument, at the pleadings stage, Gilsinger is not required to present evidence or "prove" his case.

Serio next argues that formulaic allegations that a party acted "maliciously" do not "constitute a sufficient pleading of malice under federal pleading rules." ECF No. 30 at 7–8 (quoting *Carlson*, 779 F. Supp. 2d at 947). While *Carlson* was decided at the pleadings stage, it does not stand

for the proposition that formulaic allegations that a party acted maliciously are forbidden; instead, it holds that such formulaic allegations must be supported by facts demonstrating that the actor "intended to do harm for harm's sake" rather than "as a means to some further end legitimately desired [such as hurting someone else's business by competition]." *Carlson*, 779 F. Supp. 2d at 947; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

Indeed, such formulaic allegations of malice are sufficient when combined with facts creating an "inference that [the actor] intended to do wrongful harm." *Centrifugal Acquisition Corp. v. Moon*, 849 F. Supp. 2d 814, 838 (E.D. Wis. 2012) (quoting *Carlson*, 779 F. Supp. 2d at 947) (holding that actor's "knowledge of the non-compete agreement and the fact that his parents were legally prevented from competing with CAC is more than enough to create the inference that he intended to do wrongful harm").[4]

---

[4] In *Centrifugal*, a corporation filed suit against the former owners of a battery terminal manufacturing company, the former owners' son, and the son's competing business. 849 F. Supp. 2d at 818–19. As part of an asset purchase agreement of the battery terminal manufacturing company, the owners signed a non-competition agreement. *Id.* at 824. The former owners continued to work for the company under its new ownership, but later resigned after frustration arose that the business was newly thriving under its new ownership. *Id.* at 825. Later, the former owners' son developed a competing battery terminal manufacturing company using funds and space provided by his parents. *Id.* at 826–27. On the corporation's claim for injury to business under Wisconsin Statute § 134.01, and in response to the corporation's argument on the malice element, the court held that the son's knowledge of the non-compete was sufficient to create an inference that he intended to do wrongful harm, or "harm for the sake of harm." *Id.* at 838 (internal citations omitted).

Further, under Wisconsin law, malice must be found with respect to both conspirators. *Carlson*, 779 F. Supp. 2d at 947.

Certainly, Gilsinger's amended complaint contains some formulaic allegations that Serio and CVMIC acted in concert and "maliciously." ECF No. 25 at 9–11. These formulaic allegations are supported, however, by facts that create a plausible inference at the pleadings stage—where the Court must draw all reasonable inferences in favor of Gilsinger—that Serio and CVMIC acted in concert with the intent to do harm for harm's sake "and not merely as a means to some further end legitimately desired." *Carlson*, 779 F. Supp. 2d at 947. For example, Gilsinger alleged:

30. Serio encouraged Gilsinger to work on QMCS.

31. Serio set up meetings with Gilsinger and third parties, including Equian, related to QMCS.

32. Serio never expressed any concerns about QMCS competing with CVMIC to Gilsinger.

33. Serio regularly asked Gilsinger for updates about QMCS.

34. Serio and CVMIC knew that QMCS was not in competition with CVMIC.

35. Serio knew that CVMIC made its revenue from issuing policies of insurance.

36. Serio knew that CVMIC would lose no insurance business, clients or revenue as a result of QMCS.

37. In his role as a consultant for CVMIC, Serio aggressively pushed CVMIC to enter into agreements with third parties which could have created a conflict with QMCS.

38. These agreements were not favorable to CVMIC and were opposed by Gilsinger.

39. Serio pushed Gilsinger to promote QMCS to individuals who were acting as agents for CVMIC, which would

have created a conflict of interest between QMCS and CVMIC.

40. Gilsinger refused to create conflicts of interest and avoided any appearance of a conflict between QMCS and CVMIC.

41. Serio intended to create a conflict of interest between CVMIC and QMCS.

42. When Serio failed to create an actual conflict of interest between CVMIC and QMCS, Serio intentionally made false statements to CVMIC about the existence of a conflict.

43. In April of 2019, Serio told Horner that Gilsinger had set up a personal business, the nature of which was a conflict with Gilsinger's employment with CVMIC.

44. Serio intentionally made false statements to CVMIC that Gilsinger was operating QMCS in conflict with Gilsinger's employment with CVMIC.

45. Serio's intentional false statements and actions were made to hinder Gilsinger's prospective business and to interfere directly in the contractual relationship between CVMIC and Gilsinger.

46. Serio had no lawful purpose in making his intentional false statements.

47. CVMIC knew there was no actual conflict of interest between CVMIC and QMCS.

48. Serio and CVMIC were aware of Gilsinger's desire to avoid even the appearance of a conflict of interest.

. . . .

52. During December 2019, CVMIC and Serio made intentional false statements to Glen Boyle, manager of Equian's Milwaukee office, that Gilsinger was misappropriating CVMIC contracts.

53.  CVMIC and Serio had no lawful purpose in falsely accusing Gilsinger of misappropriating CVMIC contracts.

54.  CVMIC and Serio were aware that Equian and QMCS had no formal relationship while Gilsinger was employed at CVMIC.

55.  CVMIC and Serio were aware that their intentional false statements would interfere with Gilsinger's prospective contractual relationships with Boyle and Equian.

These allegations are sufficient at the pleadings stage to support the inference that Serio and CVMIC knew about Gilsinger's desire to avoid the appearance of a conflict but that Serio and CVMIC tried to create one anyway. *See Centrifugal*, 849 F. Supp. 2d at 838. Whether or not this conduct was taken "as a means to some further end legitimately desired" under *Carlson* and its purview requires the fact-finder to conduct a review of the facts, and potentially a weighing of the evidence and a credibility determination. It is, therefore, an issue to be resolved following the pleadings stage. *Centrifugal*, 849 F. Supp. 2d at 838.

Finally, Serio argues that Gilsinger's injury to business claim under Wisconsin Statute § 134.01 is barred by the intra-corporate conspiracy doctrine. That doctrine provides that "a corporation cannot conspire with its employees. This is so because a conspiracy requires a meeting of the minds between two or more persons and the acts of a corporation *and of its agents* are considered to be those of a single legal actor." *Norkol/Fibercore, Inc. v. Gubb*, 279 F. Supp. 2d 993, 1000 (E.D. Wis. 2003) (emphasis added).

In his amended complaint, Gilsinger pleads that "[a]t all times relevant to this complaint, Defendant, Serio, was an independent consultant to CVMIC, not an employee." ECF No. 25 at 6. Under Wisconsin law, "an independent contractor may or may not be an agent." *Westmas v.*

*Creekside Tree Serv., Inc.*, 907 N.W.2d 68, 76–77 (Wis. 2018). Whether or not an independent contractor is an agent depends on whether it "has fiduciary obligations to and is subject to control by the principal." *Id.* For this reason, "[t]he question of whether one person is an agent of another is something that is frequently litigated because it can often be a fact-intensive inquiry." *Kugler v. LexisNexis Occupational Health Sols., Inc.*, 16 F. Supp. 3d 999, 1002 (E.D. Wis. 2014).

In light of this, whether Gilsinger's injury to business claim is barred by the intra-corporate conspiracy doctrine hinges on the fact-finder determining whether Serio, in his role as independent contractor as pleaded by Gilsinger, was acting as CVMIC's agent (and within the scope of that agency) during the alleged conspiracy. This process requires the fact-finder to conduct a fact-intensive inquiry that is inappropriate at the pleadings stage. Gilsinger's allegation that Serio acted as an independent contractor is sufficient to survive Serio's motion to dismiss on this issue. The Court will deny Serio's partial motion to dismiss as to Claim Five.

4. **CONCLUSION**

The Court is granting Gilsinger's motion to correct clerical mistakes. ECF No. 23. The Court is denying Serio's partial motion to dismiss Claims Four and Five. ECF No. 29.

Accordingly,

**IT IS ORDERED** that Plaintiff Greg Gilsinger's motion to correct clerical mistakes, ECF No. 23, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to replace the Court's order dated January 31, 2022, ECF No. 21, with a revised order correcting the clerical mistakes described in the body of this Order; and

**IT IS FURTHER ORDERED** that Defendant Andrew J. Serio's partial motion to dismiss Claims Four and Five of the amended complaint, ECF No. 29, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 29th day of April, 2022.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge