UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GREG P. GILSINGER,

    Plaintiff,

v.

CITIES AND VILLAGES MUTUAL INSURANCE
COMPANY and ANDREW J. SERIO,

    Defendants,

and,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

    Intervening Defendant.

Case No. 2:21-cv-00831-JPS

**CITIES AND VILLAGES MUTUAL INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)**

Defendant Cities and Villages Mutual Insurance Company ("CVMIC"), by its attorneys, Wirth + Baynard, submits the following brief in support of its motion for partial judgment on the pleadings.

## INTRODUCTION

After being terminated from his at-will job, Plaintiff, Greg Gilsinger, asserts CVMIC denied his procedural due process rights under the Fourteenth Amendment of the United States Constitution, Wis. Stats. Const. Art. 1, § 8, cl. 1 and 42 U.S.C. § 1983; violated his right to free speech under the First Amendment; defamed him; intentionally interfered with his professional relationships; injured his business under Wis. Stat. § 134.01; discriminated against him based on

age; breached an employment contract; and breached a covenant of good faith and fair dealing with him. Gilsinger also seeks promissory estoppel against CVMIC.

Several of Gilsinger's claims against CVMIC fail as a matter of law or fail to plead sufficient facts that establish a plausible claim for relief against CVMIC. *First*, Gilsinger cannot plead state law tort claims against CVMIC under a theory of respondeat superior liability without specifically identifying a CVMIC employee who committed a tort against him while also acting within their course and scope of employment for CVMIC. *Second,* Gilsinger's defamation claim, which allegedly caused Gilsinger physical and emotional injuries, is barred under the Worker's Compensation Act. *Third*, Gilsinger's age discrimination claim fails for insufficient facts after he affirmatively pleads that he was initially terminated due to an "organizational re-organization" and later had his severance and release agreement withdrawn because Defendant Andrew Serio ("Serio") told CVMIC that Gilsinger had a business conflict of interest with CVMIC. *Finally*, Gilsinger is barred from bringing a promissory estoppel claim where he also alleges that CVMIC breached a contract between them.

As such, CVMIC respectfully asks the Court to dismiss Gilsinger's state law tort claims for defamation, intentional interference with professional relationships, and injury to business; along with his age discrimination and promissory estoppel claims against CVMIC.

## FACTUAL BACKGROUND

The following facts alleged in Gilsinger's Amended Complaint are relevant to this motion.[1] Gilsinger was employed with CVMIC for 22 years and his final position with CVMIC was Director

---

[1] The facts in Gilsinger's Amended Complaint are treated as true only for purposes of this motion. CVMIC reserves the right to contest these facts. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 55 (2007) (determinations of the sufficiency of claim must be made "on the assumption that all allegations in the complaint are true (even if doubtful in fact"). Of course, CVMIC has already filed an Answer and Affirmative Defenses denying most of Gilsinger's allegations.

of the Workers Compensation Division. (Dkt. 25, ¶¶ 20, 23) On October 31, 2019, CVMIC terminated Gilsinger's employment and offered him a severance and release agreement. (Dkt. 25, ¶¶ 23-24)

Gilsinger opposed the termination and appealed the decision to the CVMIC Board. (Dkt. 25, ¶ 25) On November 22, 2019, CVMIC denied the appeal and withdrew his severance and release agreement after receiving information from Serio that Gilsinger had set up a personal business, the nature of which was a conflict with Gilsinger's employment with CVMIC. (Dkt. 25, ¶¶ 26, 42-45) Gilsinger alleges that Serio was an independent consultant to CVMIC and not a CVMIC employee. (Dkt. 25, ¶ 28)

As alleged by Gilsinger, beginning in 2017, he and Serio discussed on numerous occasions his plan to start a business to be called Quality Medical Care Solutions ("QMCS"). (Dkt. 25, ¶ 29) Gilsinger alleges that Serio encouraged him to work on QMCS and set up meetings with Gilsinger and third parties, including Equian. (Dkt. 25, ¶¶ 30-31) Gilsinger alleges that Serio pushed Gilsinger to promote QMCS to individuals who were acting as agents for CVMIC, which would have created a conflict of interest between QMCS and CVMIC. (Dkt. 25, ¶¶ 39-40)

Gilsinger alleges that when Serio failed to create an actual conflict of interest between CVMIC and QMCS, Serio intentionally made false statements to CVMIC about the existence of a conflict. (Dkt. 25, ¶ 42) Gilsinger alleged that in April of 2019, Serio told CVMIC that Gilsinger had set up a personal business, the nature of which conflicted with Gilsinger's CVMIC employment. (Dkt. 25, ¶ 43) Gilsinger also alleged that Serio made intentional false statements of fact to third parties, including CVMIC, that he was engaged in dishonest, disloyal, and unlawful conduct, by competing with CVMIC, misappropriating CVMIC contracts; and that he conspired with Attorney Richard Ceman to double bill CVMIC for work Attorney Ceman had done for

3

QMCS. (Dkt. 25, ¶ 63) Gilsinger alleges that Serio's intentional false statements to CVMIC about Gilsinger having a competing business or a conflict of interest were false statements of fact, defamatory, and were used by CVMIC to terminate his employment, withdraw his severance contract and quash his Constitutional freedoms. (Dkt. 25, ¶ 58)

Gilsinger alleged that during December 2019, CVMIC and Serio made intentional false statements to Glen Boyle, manager of Equian's Milwaukee office, that Gilsinger was misappropriating CVMIC contracts. (Dkt. 25, ¶ 52) Gilsinger alleged that during November and December 2019, CVMIC intentionally and falsely accused Attorney Rick Ceman with the law firm of Bascom, Budish & Ceman, of conspiring to double bill CVMIC for work Attorney Ceman had done for QMCS. (Dkt. 25, ¶ 56) Gilsinger alleged that Serio and CVMIC acted in concert in an effort to intentionally interfere with Gilsinger's actual and prospective contract relationships with Boyle, Equian, Attorney Ceman, and the law firm of Bascom, Budish & Ceman. (Dkt. 25, ¶ 60)

## **STANDARD OF REVIEW**

Under Rule 12(c), a party may move for judgment on the pleadings. *See* Fed.R.Civ.P. 12(c). Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party is entitled to judgment as a matter of law. *E.g., Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987). In reviewing the judgment, the court is confined to the matters presented in the pleadings and the facts are viewed in the light most favorable to the nonmoving party, but facts set forth in the complaint that undermine the plaintiff's claim are not ignored. *Brown v. Pick 'N Save Food Stores*, 138 F. Supp. 2d 1133, 1136 (E.D. Wis. 2001). The same standard as a motion to dismiss under Rule 12(b)(6) applies. *Gill v. City of Milwaukee,* 850 F. 3d 335, 339 (7th Cir. 2017).

To avoid dismissal under Rule 12(b)(6), the Amended Complaint must contain "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the facts pled by Gilsinger do not permit the Court to infer more than the *possibility* of misconduct, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.

Gilsinger cannot survive dismissal with vague and conclusory allegations merely reciting the elements of a claim. The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. To provide grounds for entitlement, Gilsinger must show "more than labels and conclusions." *Twombly*, 550 U.S. at 555. A mere "formulaic recitation of the elements of a cause of action will not do," *id.*, and the Federal Rules of Civil Procedure "do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686.

## ANALYSIS

### I. GILSINGER'S STATE LAW CLAIMS BASED ON RESPONDEAT SUPERIOR SHOULD BE DISMISSED.

Gilsinger asserts various state law claims against CVMIC seemingly based on the legal doctrine "respondeat superior" under which employers are vicariously liable for torts committed by their employees while acting in the scope of their employment. *Javier v. City of Milwaukee*, 670 F.3d 823, 828 (7th Cir. 2012). A prerequisite to vicarious liability under respondeat superior is the existence of a master/servant relationship. *Kerl v. Dennis Rasmussen, Inc.*, 2004 WI 86, ¶ 18, 273 Wis. 2d 106, 116–117, 682 N.W.2d 328, 334. Wisconsin has adopted the definition of "servant" in § 220 of the Restatement (Second) of Agency: "[a] servant is one employed to perform service for another in his affairs and who, with respect to his physical conduct in performance of

the service, is subject to the other's control or right to control." *Heims v. Hanke*, 5 Wis.2d 465, 468, 93 N.W.2d 455, 457 (1958) (*citing* Restatement (Second) of Agency § 220) (partially overruled on other grounds by *Butzow v. Wausau Mem'l Hosp.*, 51 Wis.2d 281, 187 N.W.2d 349 (1971)).

As an initial point, the Amended Complaint pleads that Serio was an independent consultant and not a CVMIC employee. (Dkt. 25, ¶ 28) As such, Gilsinger has plead himself out of any claim of vicariously liability against CVMIC for torts committed by Serio. Presumably, Gilsinger's state law tort claims against CVMIC are premised on the theory that CVMIC is vicariously liable for the actions of actual CVMIC employees. But Gilsinger fails to provide a modicum of factual detail in his Amended Complaint—he neither identifies any CVMIC employee who committed the torts against him nor alleges whether those torts were committed by CVMIC employees while acting in the scope of their employment.

Rule 8 requires Gilsinger's Amended Complaint be sufficiently detailed "to give [CVMIC] fair notice of what the claim is and the grounds upon which it rests." *Wesbrook v. Ulrich*, No. 13-CV-494-WMC, 2014 WL 811786, at *7 (W.D. Wis. Mar. 3, 2014); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Only Gilsinger will know who he believes committed tortious acts against him and he deliberately fails to place CVMIC on notice of which employee did what. Thus, CVMIC has not been given fair notice, and it has been deprived of the opportunity to investigate and defend against Gilsinger's claims. Accordingly, Gilsinger fails to plausibly allege vicarious liability for his state law claims of defamation, intentional interference with professional relationships, and injury to business. These claims also fail for separate reasons set forth below.

### A. Gilsinger's Defamation Claim Lacks the Required Specificity to State a Claim.

Gilsinger asserts a state law defamation claim against CVMIC, specifically stating that "[d]uring December 2019, CVMIC and Serio made intentional false statements to Glen Boyle, manager of Equian's Milwaukee office, that Gilsinger was misappropriating CVMIC contracts (Dkt. 25, ¶ 52) and "[d]uring November and December 2019, CVMIC intentionally and falsely accused Attorney Rick Ceman with the law firm of Bascom, Budish & Ceman of conspiring with Gilsinger to double bill CVMIC for work Ceman had done for QMCS." *Id.* at ¶ 56. As addressed above, Gilsinger does not allege who from CVMIC made false statements to Glen Boyle or who falsely accused Attorney Ceman of conspiring with Gilsinger. Moreover, the Amended Complaint only alleges false accusations as to Attorney Ceman not Gilsinger.

The Amended Complaint further generally alleges that "CVMIC made intentional false statements of fact to third parties that Gilsinger was engaged in dishonest, disloyal and unlawful conduct, by competing with CVMIC." *Id.* at ¶ 64. This allegation lacks the required specificity for a defamation claim to the extent it involves additional statements other than the December 2019 statement to Glen Boyle, or the November and December 2019 statement to Attorney Ceman. It does not include when the statements were made, to whom, or by whom. As such, this allegation in the Amended Complaint fails to state a claim for defamation because the pleading fails to set forth the particular conduct complained of and thus as a matter of law cannot state a cause of action.

### B. Defamation Claims Against CVMIC Based on Occurrences in the Course of Employment Are Pre-Empted by the Exclusive Remedy Provision of the Wisconsin Worker's Compensation Act.

The Wisconsin Worker's Compensation Act ("WCA") provides that "the right to recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employee of the same employer and the worker's compensation insurance carrier." Wis. Stat. §

7

102.03(2). For the WCA to apply: (1) the employee must sustain an "injury," defined as "harm caused by accident or disease," *Jenson v. Emp'rs Mut. Cas. Co.*, 154 Wis.2d 313, 316, 453 N.W2d 165 (1990), and (2) at the time of the injury, the employee must be "performing service growing out of and incidental to his or her employment." Wis. Stat. § 102.03(1). Specifically, the term "accident" in the WCA includes intentional acts and covers emotional and mental injuries that are caused by more than day-to-day stress. *Id.* at 317–18. Wisconsin courts indicate that defamation claims involve "injuries" as defined by the WCA and are pre-empted. *Becker v. Automatic Garage Door Co.,* 156 Wis.2d 409, 412, 456 N.W.2d 888, 889 (Ct. App. 1990).

Moreover, "Wisconsin courts have consistently ruled that the WCA exclusive remedy provision is meant to supplant actions in tort against employers." *Marino v. Arandell Corp.*, 1 F.Supp.2d 947, 953 (E.D.Wis.1998). "[W]orkers' compensation acts such as the WCA were not designed to regulate or deter employer conduct, but to financially compensate injured employees and, specifically, to redress impaired earning capacity." *Id.* at 951. The injuries alleged by Gilsinger are for "monetary losses, humiliation, mental anguish, emotional distress, monetary losses, [sic] harm to his personal relationships with his family, stress and injury to his physical and mental well-being…" (Dkt. 25, ¶ 85) Thus, Gilsinger's injury is the type covered by the WCA.

To establish preemption, CVMIC must show that Gilsinger sustained his injury "in the course of employment." *Weiss v. City of Milwaukee*, 208 Wis. 2d 95, 104–05, 559 N.W.2d 588, 592 (1997). In assessing the issue, the Court should look to the "time, place, and circumstances" under which the injury occurred. *Id*. As addressed above, the Amended Complaint includes a broad, non-specific allegation of defamation against CVMIC. (Dkt. 25, ¶ 64) According to the Amended Complaint, CVMIC terminated Gilsinger on October 31, 2019. *Id.* at ¶ 23. Therefore, to the extent the Court allows Gilsinger to proceed with a defamation claim against CVMIC, any

claim based on events occurring before October 31, 2019 would be pre-empted by the WCA and cannot survive this motion.

### C. Gilsinger Fails to State an Intentional Interference With Professional Relationships Claim Against CVMIC.

Gilsinger asserts a claim of "intentional interference with professional relationships" against CVMIC. (Dkt. 25, ¶¶ 86-87) Under Wisconsin law, a claim for tortious interference has five elements: "(1) the plaintiff had a contract or a prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere." *Medline Indus., Inc. v. Diversey, Inc.*, 563 F. Supp. 3d 894, 907 (E.D. Wis. 2021). A tortious interference claim must be based on a "sufficiently certain, concrete and definite prospective relationship," (*Shank v. William R. Hague*, *Inc.*, 192 F.3d 675, 689 (7th Cir. 1999)(partially overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965(7th Cir. 2013)) and cannot succeed without factual allegations that "suffice to explain the nature of the alleged contractual interference[.]" *Armament Sys. & Procs., Inc. v. Emissive Energy Corp.,* No. 06-C-833, 2007 WL 2572304, at *5 (E.D. Wis. Sept. 5, 2007) (dismissing tortious interference claim based on allegation that party "directed 'unlawful activities' that interfered with [claimant's] 'actual and prospective economic relations'"). Thus, where a plaintiff fails to plead "factual support" to establish that the defendant actually interfered with the contract at issue, the claim fails. *See Willert v. Andre*, No. 17-cv-496-jdp, 2017 WL 5033658, at *3 (W.D. Wis. Oct. 31, 2017).

The Amended Complaint alleges the bare elements of tortious interference by alleging that Gilsinger "had contracts and prospective contracts with Boyle, Equian, Attorney Ceman and the law firm of Bascom, Budish & Ceman." (Dkt. 25, ¶ 87) But the Amended Complaint provides no

9

factual support for that bare statement. Gilsinger fails to state a viable claim for multiple reasons. *First*, Gilsinger has not sufficiently alleged some bargained-for right of his or, at a bare minimum, a "sufficiently certain, concrete and definite" prospective contractual relationship between him and those parties. *Second*, the Amended Complaint fails to identify what CVMIC employee may have intentionally interfered with those contracts. *Third*, the Amended Complaint does not sufficiently allege a causal connection between the individual's interference and Gilsinger's claimed damages or the nature and quantum of the damages he actually sustained. (*Id.*) Gilsinger has asserted an "unadorned, the-defendant-unlawfully-harmed-me accusation" that fails to satisfy basic pleading standards under *Iqbal* and *Twombly*. *Twombly*, 550 U.S. at 555. As a result, the Court should dismiss Gilsinger's tortious interference claims against CVMIC.

### D. Gilsinger Fails to State a Claim for Injury to Business Under Wis. Stat. § 134.01.

Wis. Stat. § 134.01 imposes tort liability on parties that conspire to injure another in his or her trade or business. *Maleki v. Fine-Lando Clinic Chartered*, 162 Wis. 2d 73, 86-87, 469 N.W.2d 629 (1991). To state a claim Gilsinger must allege: (1) the defendants acted together, (2) with a common purpose to injure the plaintiff's business, (3) with malice, and (4) the acts financially injured Gilsinger. Wis. Stat. § 134.01. "The key element in a § 134.01 claim is malice." *Kuraki Am. Corp. v. Dynamic Intl. of Wisconsin Inc.*, No. 14-C-583, 2014 WL 6834226, at *3 (E.D. Wis. Dec. 3, 2014). "There can be no conspiracy if malice is not found in respect to both conspirators." *Maleki*, 162 Wis. 2d at 86. Like common law conspiracy, § 134.01 requires that the defendants actually conspire or agree. *See Bartley v. Thompson*, 198 Wis. 2d 323, 342 (Ct. App. 1995).

For purposes of Wis. Stat. § 134.01, "malice requires more than merely intentional injury." *Raab v. Wendel*, No. 16-CV-1396, 2019 WL 1060856, at *24 (E.D. Wis. Mar. 6, 2019). For conduct to be malicious "it must be conduct intended to cause harm for harm's sake," *Maleki* at

86, and "the defendants' motive cannot make sense." *Roumann Consulting Inc. v. Symbiont Constr., Inc.,* No. 18-C-1551, 2019 WL 3501527, at *9–10 (E.D. Wis. Aug. 1, 2019). Thus, a party does not violate § 134.01 if it acts with the rational desire to cause harm "for the sake of competitive advantage." *Maleki* at 86.

The Amended Complaint contains vague and conclusory boilerplate allegations that "CVMIC and Serio combined, associated, agreed, mutually undertook and/or concerted together for the purpose of acting maliciously with an irrational desire to inflict harm for harm's sake to injure Gilsinger in his reputation, trade, business and/or profession in violation of Wisconsin Statute § 134.01, causing injury to Gilsinger in his reputation, trade, business and/or profession, all to his damage." (Dkt. 25, ¶ 89) *First*, similar allegations doomed a § 134.01 claim in *Pappas v. Cnty. of Milwaukee*, 2012 WI App 88, ¶¶ 28-29, 343 Wis. 2d 678, 819 N.W.2d 562. Simply alleging the words "malice" or "maliciousness" is not enough. In *Pappas*, the Wisconsin Court of Appeals affirmed the lower court's dismissal of a § 134.01 claim because, among other reasons, the complaint failed to sufficiently allege malice. There, the complaint alleged: "The . . . actions . . . by SSYC and its individual Board Members were part of a conspiracy by [d]efendant Aring and other unnamed co-conspirators to act in concert for the purpose of willfully and/or maliciously injuring [p]laintiff's reputation and profession by preventing him from doing or performing lawful acts (i.e., the enjoyment of the rights and privileges. of his membership in South Shore Yacht Club)." *Id.* The court deemed these allegations "merely conclusory" and insufficient to satisfy the pleading requirements of § 134.01.

*Second*, Gilsinger's claim under Wis. Stat. § 134.01 fails as a matter of law because the Amended Complaint establishes that CVMIC acted to further its own business and financial

11

interests, not for the sake of harming Gilsinger. According to the Amended Complaint, CVMIC was told Gilsinger was competing with CVMIC and misappropriating CVMIC contracts:

> Serio made intentional false statements of fact to third parties, including CVMIC, that Gilsinger was engaged in dishonest, disloyal and unlawful conduct, by competing with CVMIC; misappropriating CVMIC contracts; and, by Gilsinger conspiring with Attorney Ceman to double bill CVMIC for work Ceman had done for QMCS.

(Dkt. 25, ¶ 63) As alleged, this is precisely the sort of calculated, self-interested motivation—as opposed to an "irrational desire to cause harm for harm's sake," (*Roumann Consulting Inc* at \*10)—that takes the conduct alleged out of the realm of Wis. Stat. § 134.01. Because that defect is fatal to Gilsinger's claim under Wis. Stat. § 134.01, the Court should dismiss the Fifth Claim for Relief against CVMIC.

Moreover, the Amended Complaint does not plausibly allege an agreement between CVMIC and Serio. "Mere similarity of conduct among various persons and the fact that they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish the existence of a conspiracy." *Duncan v. Manning*, 998 F. Supp. 2d 725, 734–35 (E.D. Wis. 2014) (internal citation omitted). Instead, the Amended Complaint is replete with allegations about how Serio intentionally mislead CVMIC and directly interfered with CVMIC and Gilsinger's relationship. For instance, Gilsinger alleges "Serio intentionally made false statements to CVMIC" (Dkt. 25, ¶¶ 42,44); that "Serio's intentional false statements and actions were made to … interfere directly in the contractual relationship between CVMIC and Gilsinger" (*Id*. ¶ 45); that "Serio pushed Gilsinger to promote QMCS to individuals who were acting as agents for CVMIC, which would have created a conflict of interest between QMCS and CVMIC" (*Id.* ¶ 39); "Serio's intentional false statements to CVMIC about Gilsinger having a competing business or a conflict of interest were false statements of fact, defamatory and

12

were used by CVMIC to terminate Gilsinger's employment, withdraw his severance contract and quash his Constitutional freedoms" (*Id.* ¶ 58). Because Gilsinger does not allege facts that show some agreement, explicit or otherwise, between CVMIC and Serio the claim is insufficient as a matter of law.

## II. GILSINGER HAS FAILED TO STATE A CLAIM FOR AGE DISCRIMINATION.

The ADEA prohibits an employer from "discharg[ing] any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1) (2003). To establish a claim under the ADEA, a plaintiff-employee must show that "the protected trait (under the ADEA, age) actually motivated the employer's decision"—that is, the employee's protected trait must have "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000). Such a claim may be proven through direct evidence of the employer's discriminatory motive, or through the indirect, burden-shifting approach articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Direct evidence usually requires an admission by the decisionmaker that his actions were based on age. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003). When a plaintiff chooses to proceed under the direct method, he must present evidence of discriminatory animus, *i.e.*, a "smoking gun," or circumstantial evidence which establishes discriminatory motive through a longer chain of inferences. *Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010).

To prove a claim under the indirect method, Gilsinger must demonstrate that he: (1) was over 40 years old; (2) was meeting his legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than younger, similarly situated employees.

13

*Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). If a plaintiff succeeds in establishing a prima facie case, this creates a rebuttable presumption of discrimination and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Little v. Ill. Dep't. of Rev.*, 369 F.3d 1007, 1011 (7th Cir. 2004). Once an employer articulates a legitimate, non-discriminatory rationale for termination, the burden shifts back to the plaintiff to demonstrate the proffered reason is merely pretextual. *Id.*

The Amended Complaint alleges that, "Serio's intentional false statements to CVMIC about Gilsinger having a competing business or a conflict of interest" were used by CVMIC to terminate Gilsinger's employment and withdraw his severance contract. (Dkt. 25, ¶ 58) There is no direct age discrimination alleged and Gilsinger fails to allege facts supporting the critical fourth elements of the indirect method. That is, Gilsinger must allege some evidence that demonstrates he was treated less favorably than younger, similarly situated employees outside of his protected class. *Martino v. MCI Comm. Servs., Inc.*, 574 F.3d 447, 453 (7th Cir. 2009). But Gilsinger does not allege any facts to suggest he was treated less favorably than younger employees, nor does he identify such similarly situated employees. Thus, this Court should dismiss Gilsinger's age discrimination claim against CVMIC.

### III. GILSINGER IS PRECLUDED FROM BRINGING A PROMISSORY ESTOPPEL CLAIM AGAINST CVMIC.

Wisconsin substantive law governs Gilsinger's promissory estoppel claim, the elements of which are (1) the existence of a promise that (2) the promisor reasonably should have expected would induce substantial action or inaction, (3) did induce such action or inaction, and (4) must be enforced in order to avoid injustice. *Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶ 53, 265 Wis.2d 703, 739, 666 N.W.2d 38, 56; *see also Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 698, 133 N.W.2d 267 (1965).

A claim for promissory estoppel will be barred where a valid contract exists between the parties unless the contract "fails to address the essential elements of the parties' total business relationship." *Kramer v. Alpine Valley Resort, Inc.*, 108 Wis.2d 417, 425, 321 N.W.2d 293, 297 (1982). Moreover, "where a plaintiff asserts a breach of contract claim and fails to allege any facts from which it could at least be inferred that the contract on which that claim is based might be invalid, the plaintiff is precluded from pleading in the alternative claims that are legally incompatible with the contract claim." *Higgins v. Catalyst Exhibits, Inc.*, No. 21-CV-1021, 2022 WL 356019, at *7 (E.D. Wis. Feb. 7, 2022).

In the present case, Gilsinger asserts a breach of contract claim against CVMIC alleging "a contract supported by consideration, that was breached by CVMIC when it denied progressive discipline protection and an appeal hearing, causing Gilsinger to suffer, without limitation, a loss of the benefits of his bargain." (Dkt. 25, ¶ 93) The Amended Complaint fails to allege any facts from which it could be inferred the contract might be invalid. (*Id.* ¶¶ 18, 92-93) As such, Gilsinger is precluded from also pleading promissory estoppel based on CVMIC's promise to him of "progressive discipline protection and an appeal hearing." (*Id.* ¶ 95)

## CONCLUSION

For the reasons stated above, CVMIC respectfully requests that this Court dismiss Gilsinger's defamation claim, intentional interference with professional relationships claim, injury to business claim, age discrimination claim, and promissory estoppel claim alleged against it.

**[SIGNATURE PAGE FOLLOWS]**

Dated at Milwaukee, Wisconsin this 11th day of July, 2022.

>WIRTH + BAYNARD
>Attorneys for Defendant Cities and
>Villages Mutual Insurance Company
>
>By: */s/ Kyle R. Moore*
>Kyle R. Moore, WI State Bar No. 1101745
>788 North Jefferson Street, Suite 500
>Milwaukee, WI 53202-4620
>T: (414) 225-4060 / F: (414) 271-6196
>E-mail: krm@wbattys.com