UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GREG P. GILSINGER,

      Plaintiff

v.                                             Case No. 21-cv-831

CITIES AND VILLAGES MUTUAL
INSURANCE COMPANY; AND
ANDREW J. SERIO,

      Defendants.

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT
## CITIES AND VILLAGES MUTUAL INSURANCE COMPANY MOTION TO DISMISS

The Plaintiff, Greg P. Gilsinger, through his attorneys, Alan C. Olson & Associates, S.C., by Alan C. Olson, submits this Brief in Opposition to the Motion to Dismiss filed by Defendant, Cities and Villages Mutual Insurance Company, as follows:

### PROCEDURAL HISTORY

Gilsinger filed a Complaint on July 8, 2021, against the Defendants, Cities and Villages Mutual Insurance Company ("CVMIC") and Andrew J. Serio. (Dkt. No. 1). Pursuant to the court's January 31, 2022 order, Gilsinger filed an amended complaint on March 2, 2022. (Dkt. No. 25). Defendant Serio then filed a motion to dismiss Gilsinger's intentional interference with professional relationships and injury to business claims. The Court denied Serio's motion on April 29, 2022. (Dkt. No. 35). In the court's April 29, 2022 order, the court admonished the parties for their failure to follow the court's January 31, 2022 order requiring the parties to meet and confer regarding the amended complaint to avoid needless motions to dismiss. The court then ordered the parties to meet and confer prior to filing a motion to dismiss. (Dkt. No. 36).

Without any attempt to meet or confer, CVMIC now moves to dismiss Gilsinger's Amended Complaint as to the defamation claim, intentional interference with professional relationships claim, injury to business claim, age discrimination claim, and promissory estoppel claim. (Dkt. No. 40). CVMIC argues that Gilsinger's defamation claim is preempted by the Wisconsin Worker's Compensation Act and that Gilsinger failed to state a claim upon which relief could be granted for the other contested claims. Notwithstanding CVMIC's failure to meet and confer with Gilsinger's counsel prior to filing its motion to dismiss, the motion must be denied because Gilsinger states viable claims.

## ARGUMENT

### I. The Motion to Dismiss standard is deferential to Gilsinger's claims.

A motion to dismiss tests the sufficiency of the complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). "A plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citing Fed.R.Civ.P. 8(a)(2); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). To survive a motion to dismiss, plaintiff need only allege facts that give rise to a claim that is plausible on its face. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## II. CVMIC's failure to meet and confer should result in the denial of its motion.

Pursuant to the court's January 31, 2022 order (Dkt. 21), and May 18, 2022 Pretrial Procedures Order (Dkt. 36), parties were required to meet and confer regarding disputed claims in the Amended Complaint prior to filing a motion to dismiss. In the court's April 27, 2022 order, counsel for CVMIC was admonished for its failure to meet and confer during the process of amending the complaint. CVMIC was explicitly cautioned that it "had an obligation to meet and confer on each of the new allegations with Gilsinger's counsel." (Dkt. No. 35). CVMIC failed to meet and confer regarding the amended complaint and failed to meet and confer prior to filing its motion to dismiss. This repeated failure to comply with the court's orders should result in the denial of CVMIC's motion and possibly sanctions. Alternatively, Gilsinger should be given leave to amend his complaint to address any potential issues raised in CVMIC's motion, as explained in the Pretrial Procedures Order would be the typical result. (Dkt. 36, p. 3).

Pursuant to Fed. R. Civ. P. 16(c)(2)(L), the court may adopt special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems. The spirit, intent, and purpose of Rule 16 is broadly remedial, allowing courts to actively manage the preparation of cases for trial. *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 652 (7th Cir. 1989). The wording of the rule and the accompanying commentary make plain that the entire thrust of the amendment to Rule 16 was to urge judges to make wider use of their inherent power to manage their dockets. *G. Heileman Brewing Co.*, 871 F.2d at 652. "Courts may exercise their inherent

powers and invoke dismissal as a sanction in situations involving disregard by parties of orders, rules or settings." *Link v. Wabash R.R.*, 291 F.2d 542, 546 (7th Cir. 1961), *aff'd*, 370 U.S. 626 (1962).

CVMIC's repeated failure to meet and confer in this matter should result in the denial of its motion and possibly sanctions. In defiance of the court's three orders, CVMIC deliberately failed to participate in the meet and confer process now for the second time. Their conduct is especially troublesome because their motion rehashes issues that were decided in Gilsinger's favor. Counsel for CVMIC was repeatedly warned of their obligation to meet and confer and failed to heed those warnings. CVMIC's disregard of the court's orders is sanctionable.

### III. CVMIC is vicariously liable for the acts of its employees.

CVMIC first argues that all of Gilsinger's state law claims should be dismissed because Serio was not an employee of CVMIC, and therefore, CVMIC cannot be vicariously liable for his tortious actions. This assertion is correct, albeit irrelevant, because Gilsinger does not allege that CVMIC is liable because of Serio's actions. Instead, the Amended Complaint plainly alleges that CVMIC employees and Serio acted in concert when committing wrongful acts.

CVMIC also argues that Gilsinger failed to put CVMIC on notice as to the nature of Gilsinger's claims because of the lack of specifically identified CVMIC employees, but this assertion is plainly incorrect. Gilsinger's Amended Complaint puts CVMIC on notice as to the nature of his claims and identifies by name at least one CVMIC employee—Ken Horner—who was involved in the tortious acts. Gilsinger is not required to know the identities of each employee who was involved at this stage, and CVMIC itself is in the best position to identify the individuals who worked closely with Serio after Gilsinger was fired. *See Alexander v. United States*, 721 F.3d 418, 424 (7th Cir. 2013) ("Rule 8 does not demand that a plaintiff prove his case

4

at the outset of litigation, nor does it demand that a plaintiff come to court ready to plead facts…that he has no way of knowing prior to discovery.")

Furthermore, this is the exact sort of issue which could have been resolved by meeting and conferring prior to the filing of the motion to dismiss and the Amended Complaint. In addition to Ken Horner, Gilsinger has been made aware that another CVMIC employee, Michelle Voskuil, was involved in the tortious acts committed against him. To the extent CVMIC demanded that its employees be individually named in the lawsuit, Gilsinger could have obliged.

### IV. Gilsinger's defamation claim (Claim Three) is not barred by the WCA and states a specific claim upon which relief may be granted.

CVMIC's second argument for dismissal, that Gilsinger's defamation claim is barred by the WCA and fails to state a claim because the claim lacks specificity, clearly demonstrates the need for a meet and confer requirement as it is addressed by the Amended Complaint. CVMIC acknowledges that the WCA only applies to defamation which occurred during Gilsinger's employment. Gilsinger was fired on October 31, 2021, and the Amended Complaint identified conversations in November and December 2021 as the basis for his defamation claim. Accordingly, Gilsinger's defamation claim cannot be barred by the WCA because the conversations Gilsinger identified as supporting Gilsinger's defamation claim occurred after his employment ended at CVMIC.

CVMIC also argues that the defamation claim lacks the required specificity to state a claim. This argument is simply CVMIC's initial argument, that Gilsinger did not identify CVMIC employees by name in his Amended Complaint and therefore cannot establish *respondeat superior* liability, rehashed. The only area in which CVMIC claims that the Amended Complaint lacks specificity is the names of the employees involved in the defamation. In his

5
Case 2:21-cv-00831-JPS   Filed 07/26/22   Page 5 of 11   Document 48

Amended Complaint, Gilsinger identifies the nature of the defamatory comments made by CVMIC employees, to whom the comments were made, and how the comments were defamatory. At this stage, Gilsinger is not required to know the names of each employee who met with Glen Boyle and falsely accused Gilsinger of misappropriating contracts or each employee who falsely accused Gilsinger of having CVMIC billed for QMCS work. However, Gilsinger included Ken Horner and could have added Michelle Voskuil, had CVMIC met and conferred with Gilsinger and raised this issue prior to the filing of the Amended Complaint.

### V. The court previously ruled that Gilsinger pled a valid intentional interference claim (Claim Four).

CVMIC argues that Gilsinger's intentional interference claim failed to state a claim in three ways—first, in failing to identify a prospective contract which was interfered with, second, in failing to identify what CVMIC employee interfered with the contracts, and third, in failing to link the interference with his damages. Each of these arguments is made with no legal or factual support. Gilsinger's Amended Complaint pleads facts that, when accepted as true and considered in whole, allow the court to draw the reasonable inference that CVMIC is liable for the intentional interference alleged.

Wisconsin has long recognized a claim for tortious interference with professional relationships. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999) (citing *Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir. 1994); *Cudd v. Crownhart*, 122 Wis. 2d 656, 658-59, 364 N.W.2d 158 (Ct. App. 1985)). There are five elements to a claim for tortious interference with a prospective contract: (1) the plaintiff had a contract or a prospective contractual relationship with a third party; (2) the defendant interfered with that relationship; (3) the interference by the defendant was intentional; (4) there was a causal connection between the interference and damages; and (5) defendant was not justified or privileged to interfere.

*Wesbrook v. Ulrich*, 840 F.3d 388 (7th Cir. 2016) (citing *Briesemeister v. Lehner*, 295 Wis. 2d 429, 720 N.W.2d 531, 542 (Wis. App. 2006)).

CVMIC's first argument in relation to Claim Four has already been rejected by the court. In the court's April 29, 2022 order, the court acknowledged four contracts or prospective contracts contained in Gilsinger's pleadings. Gilsinger's pleadings are only required to "plausibly allege a prospective contract at the motion to dismiss phase." *Goodall Oil Company v. Pilot Corporation*, 19-cv-428-jdp, 2019 WL 5218870, at *3 (W.D. Wis. Oct. 16, 2019) (slip copy) (quoting *Stucchi USA, Inc. v. Hyquip, Inc.*, 09-CV-732, 2010 WL 2990966, at *5, 2010 U.S. Dist. LEXIS 76926, at *17 (E.D. Wis. July 28, 2010)). Gilsinger identified the contracts or prospective contracts with specificity, and how those contracts were affected by CVMIC's interference.

CVMIC's second argument in relation to Claim Four is the same as CVMIC's initial argument, that Gilsinger did not identify CVMIC employees by name in his Amended Complaint and therefore cannot establish *respondeat superior* liability. The same CVMIC employees who defamed Gilsinger, Ken Horner and Michelle Voskuil, interfered with his contracts and prospective contracts. Other individuals may have also interfered, and Gilsinger is not required to identify each employee by name before he is able to discover that information.

CVMIC's final argument in relation to Claim Four is that Gilsinger failed to allege the fourth element of a tortious interference with prospective contracts claim. This argument fails because the complaint repeatedly identifies how CVMIC's interference caused Gilsinger damage. Because of the interference by CVMIC, QMCS lost out on prospective contracts or contracts with Glen Boyle, Equian, Attorney Rick Ceman, and the law firm of Bascom, Budish

& Ceman. As pled by Gilsinger, this caused him monetary damage. The connection between the lost relationships and CVMIC's wrongful acts is direct and made plain by the pleadings.

### VI. The court previously ruled that Gilsinger pled a valid injury to business claim (Claim Five).

CVMIC claims that Gilsinger's injury to business claim under Wis. Stat. § 134.01 fails because Gilsinger failed to allege malice and failed to allege an agreement between Serio and CVMIC. These arguments have already been rejected by the court in its April 29, 2022 order. The court stated the facts pled in Gilsinger's Amended Complaint are sufficient to "create a plausible inference at the pleadings stage … that Serio and CVMIC acted in concert with the intent to do harm for harm's sake." (Dkt. No. 35). Despite that clear ruling, CVMIC argues that Gilsinger's pleadings do not establish that CVMIC had intent to do harm for harm's sake, attempting to relitigate the exact argument already rejected by the court.[1]

Gilsinger repeatedly pled facts which would create an inference that CVMIC acted in concert with Serio with the intent to harm Gilsinger for harm's sake. (Dkt. 25, ¶¶34, 47, 48, 52, 53, 54, 55). Gilsinger included specific facts which support an inference of malice, such as CVMIC acting on information it knew was false to harm Gilsinger. Gilsinger's injury to business claim pleads facts that allow the court to draw the reasonable inference that CVMIC violated Wis. Stat. § 134.01.

### VII. Gilsinger's age discrimination claim (Claim Six) is valid.

CVMIC claims that Gilsinger's age discrimination claim fails because Gilsinger did not show that he was treated less favorably than younger employees. While Gilsinger does not make

---

[1] CVMIC even cites a case in its motion, *Maleki v. Fine-Lando Clinic Chartered*, S.C., 469 N.W.2d 629, 634 (Wis. 1991), which was explicitly rejected by the court as "procedurally inapposite" in its April 29, 2022 order.

a conclusory statement as such, his Amended Complaint clearly explains the nature of his age discrimination allegation. Gilsinger was forced out of his role because of age discrimination, and when he challenged this action by filing an EEOC complaint in August 2021, CVMIC retaliated with tortious conduct. (Dkt. No. 25, ¶¶ 20-26). Gilsinger's EEOC complaint explained the nature of his age discrimination in significantly more detail, putting CVMIC on notice as to the specific basis of his claim.

In both his Amended Complaint and EEOC charge, Gilsinger explained that several older executives were being pushed to retire, and he was given notice that his position was being eliminated as part of an "organizational restructure" in which his position was the only one eliminated. (Dkt. No. 25, ¶¶ 21-24). In his EEOC charge, Gilsinger explains the nature of the "organizational restructure" identified in the Amended Complaint more specifically—Gilsinger stated that the Director of Claims position was created with job duties substantially similar to Gilsinger's job duties, but Gilsinger was not considered for the role and a much younger individual was hired into it.

CVMIC was provided sufficient notice as to the basis of Gilsinger's claims in the Amended Complaint, and was provided specific background detail in the EEOC complaint. To the extent that CVMIC's argument relies on the failure of the Amended Complaint to contain allegations which were first made in the EEOC action, Gilsinger should be given leave to amend his complaint because of CVMIC's failure to raise this issue during the meet and confer process.

**VIII. Gilsinger is not precluded from seeking promissory estoppel (Claim Eight).**

CVMIC's final argument in support of dismissal turns on a misunderstanding of the legal precedent cited in support of its position. Specifically, CVMIC alleges that Gilsinger cannot maintain a contract claim and a promissory estoppel claim without alleging that the contract

9
Case 2:21-cv-00831-JPS   Filed 07/26/22   Page 9 of 11   Document 48

claim might be invalid. This is true in cases in which there is clearly a valid written contract which is determinative to the dispute, but CVMIC disputed the existence of a contract in its answer and Gilsinger's Amended Complaint makes it clear that CVMIC's employment policies and practices form the basis of a contractual or quasi-contractual claim.

CVMIC cites *Higgins v. Catalyst Exhibits, Inc*. for this contention, but the facts of that case make it clear that it does not apply to this matter. No. 21-CV-1021, 2022 WL 356019, at *7 (E.D. Wis. Feb. 7, 2022). In *Higgins*, the parties had a valid written contract employment contract which controlled every aspect of the claims. *Id*. Because the matter was plainly reduced to a valid written contract, the plaintiff needed to allege that the written contract was potentially invalid in some way to ever recover under a theory of promissory estoppel. *Id*.; *see also, Harley Marine Servs., Inc. v. Manitowoc Marine Grp., LLC*, 759 F. Supp. 2d 1059, 1062 (E.D. Wis. 2010) (Dismissal of quasi-contractual claims appropriate when "neither the existence or validity of the contract is in dispute.")

In contrast, Gilsinger's contract claims are disputed by CVMIC. (Dkt. No. 31, ¶93.) Accordingly, the rationale of *Higgins* supports, rather than contradicts, Gilsinger's use of quasi-contractual claims in the alternative. Furthermore, because the claims are based on Defendant's employment policies and practices rather than an acknowledged written contract, Gilsinger's Amended Complaint necessarily acknowledges that the contractual relationship may be quasi-contractual instead. In either case, this matter is plainly unlike the cases in which the parties' contract was found to be so obvious as to warrant the dismissal of quasi-contractual claims.

## CONCLUSION

When accepting as true all well-pleaded factual allegations in the Amended Complaint and drawing all reasonable inferences in Gilsinger's favor, CVMIC's Motion to Dismiss the Complaint must be denied.

Dated this 26th day of July, 2022.

s/ Alan C. Olson
Alan C. Olson, SBN 1008953
Alan C. Olson & Associates, S.C.
Attorneys for Plaintiff
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: AOlson@Employee-Advocates.com